UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Quantronix, Inc., a Utah
corporation,

          Plaintiff,

v.

Data Trak Technologies, Inc.,
a Minnesota corporation; Data Trak
Solutions NA, Inc., a Minnesota
corporation; Wildwood Technology, LLC,
a Minnesota Limited Liability Company;
Robert Tessier, an individual; and Michael
Everson, an individual;

          Defendants.

Civil No. 07-1799 (DWF/AJB)

**MEMORANDUM
OPINION AND ORDER**

_____

Devan V. Padmanabhan, Esq., and Paul J. Robbennolt, Esq., Dorsey & Whitney LLP; H. Dickson Burton, Esq., Edgar R. Cataxinos, Esq., J. Jeffrey Gunn, Esq., and Krista Weber Powell, Esq., TraskBritt, PC, counsel for Plaintiff.

Kathryn K. Smith, Esq., and Michael S. Sherrill, Esq., Sherrill Law Office; Mark E. Duea, Esq., and Timothy R. Geck, Esq., Geck & Duea, counsel for Defendants.

_____

**INTRODUCTION**

The above-entitled matter came before the Court pursuant to Plaintiff Quantronix, Inc.'s ("Quantronix") Motion for Preliminary Injunction and Request for Evidentiary Hearing[1] and Defendant Data Trak Technologies, Inc., Data Trak Solutions NA, Inc.,

---

[1] At oral argument, Quantronix indicated that there was no longer a need for an evidentiary hearing in order for the Court to rule on its Motion for Preliminary

(Footnote Continued on Next Page)

Wildwood Technology, LLC, Robert Tessier, Michael Everson, and Troy Buchholz's (collectively "Data Trak") Motion for a Stay of Litigation on the '464 Patent Pending Completion of Reexamination of the '464 Patent.  In its Complaint, Quantronix asserts the following counts against Data Trak:  (1) patent infringement of United States Patent No. 5,042,015 (the "'015 patent"); (2) patent infringement of United States Patent No. 5,105,392 (the "'392 patent"); and (3) patent infringement of United States Patent No. 6,850,464 (the "'464 patent").  For the reasons stated below, the Court grants Quantronix's Motion for Preliminary Injunction.  Also, consistent with the Court's statements and ruling made during oral argument on July 26, 2007, the Court denies Data Trak's Motion for a Stay.

## BACKGROUND

Quantronix is a corporation that develops, manufacturers, markets, and sells equipment and apparatuses for measuring, dimensioning, cubing, sizing, and weighing packages and objects.  The '015 patent (issued August 20, 1991, and entitled "Measuring Method and Apparatus"), the '392 patent (issued April 14, 1992, and entitled "Measuring Method and Apparatus"), and the '464 patent (issued February 1, 2005, and entitled "Dimensioning System and Method of Dimensioning"), all relate to measuring, dimensioning, cubing, sizing, and weighing packages and objects.  Quantronix owns the

---

(Footnote Continued From Previous Page)
Injunction.  Based on that assertion, the Court denies Quantronix's request for an evidentiary hearing as moot.

'015, '392, and '464 patents by assignment.  The '015 and '392 patents expire in 2009 and the '464 patent expires in 2023.

Starting in January 2007, certain package carriers such as United Parcel Service ("UPS") and Federal Express Corporation ("FedEx") changed the manner in which they charge clients for ground freight package shipments.  Now, dimensional weight calculations are a requirement for most packages shipped.  Both UPS and FedEx have instituted dimensional weight requirements on all ground shipping and express overnight packages.  It is undisputed that these changes have increased the demand for dimensional data-acquisition systems.

In January 2007, Clark Skeen, President of Quantronix, attended a trade show in Chicago.  There, Skeen observed a Data Trak dimensioning system (the "Dimmer"). Thereafter, Quantronix determined that Defendants Data Trak Technologies, Inc., Data Trak Solutions NA, Inc., and/or Michael Everson,[2] use and offer to sell and/or lease "Package Dimensioner" apparatuses, including the Dimmer, on the website www.dtsna.com/dimmer.cfm.  (Compl. ¶ 17.)  Quantronix also determined that Defendants Wildwood Technology, LLC and/or Robert Tessier[3] manufacture these apparatuses.  (*Id.* ¶ 22.)

On March 19, 2007, Quantronix learned that Johnstone Supply—a company that Quantronix had previously sold and leased package-dimensioning systems to—had

---

[2]     Everson is the Chief Executive Officer of Defendant Data Trak Solutions, NA.

[3]     Tessier is the owner of Defendant Wildwood Technology, LLC.

declined Quantronix's offer to purchase or lease Quantronix's products. Instead, Johnston purchased eight Dimmer dimensioning systems from Data Trak. On March 29, 2007, and thereafter, Data Trak issued several press releases in which it offered to sell an automated dimensional data-acquisition system called the "Dimmer."[4]

On April 6, 2007, Quantronix filed the above-entitled action.[5] Quantronix contends that Data Trak's apparatuses, and specifically the Dimmer, use ultrasonic transducers that are capable of emitting ultrasonic waves toward an object or package from multiple directions, receiving ultrasonic waves reflected from the object or package, and estimating, calculating, and/or determining the dimensions of the object or package using the reflected ultrasonic waves. Accordingly, Quantronix asserts that the Dimmer infringes the claims of the patents-at-issue. In addition, Quantronix asserts that Data Traks' infringing activities are eroding Quantronix's market position and undermine the strength of the patents-at-issue and Quantronix's credibility and good will.

## DISCUSSION

### I. Standard of Review

Federal Circuit law governs the issuance of preliminary injunctions in patent cases. "[A] preliminary injunction is a drastic and extraordinary remedy that is not to be routinely granted." *Intel Corp. v. ULSI Sys. Tech., Inc.*, 995 F.2d 1566, 1568 (Fed. Cir.

---

[4] Quantronix learned of these press releases after it had filed suit.

[5] On May 10, 2007, Data Trak filed a Request for *Inter Partes* Reexamination of the '464 patent with the United States Patent and Trademark Office. There, as here, Data Trak asserts that the '464 patent is either invalid as anticipated or obvious based on United States Patent No. 6,298,009.

1993).  "A decision to grant or deny a preliminary injunction is within the sound discretion of the district court[.]"  *Oakley, Inc. v. Sunglass Hut Int'l*, 316 F.3d 1331, 1338 (Fed. Cir. 2003).  A moving party is entitled to a preliminary injunction if it can succeed in showing the following four factors:  (1) a reasonable likelihood of success on the merits; (2) irreparable harm if the injunction is not granted; (3) balance of harms tipping in its favor; and (4) that the public interest is impacted favorably by an injunction.  *Purdue Pharma L.P. v. Boehringer Ingelheim GMBH*, 237 F.3d 1359, 1363 (Fed. Cir. 2001).  "These factors, taken individually, are not dispositive; rather, the district court must weigh and measure each factor against the other factors and against the form and magnitude of the relief requested."  *Amazon.com, Inc. v. Barnesandnoble.com, Inc.*, 239 F.3d 1343, 1350 (Fed. Cir. 2001) (quotations omitted).  However, "a movant cannot be granted a preliminary injunction unless it establishes *both* of the first two factors[.]"  *Amazon.com, Inc.*, 239 F.3d at 1350 (emphasis in original).

**II.   Analysis**

Quantronix has moved for a preliminary injunction based on Data Trak's alleged infringement of the '015, '392, and '464 patents.  For purposes of its preliminary-injunction motion, Quantronix focuses its infringement analysis on Claim 21 of the '015 patent, Claim 6 of the '392 patent, and Claim 1 of the '464 patent.

**A.   Likelihood of Success on the Merits**

"[B]ecause of the extraordinary nature of the relief, the *patentee* carries the burden of showing likelihood of success on the merits with respect to the patent's validity, enforceability, and infringement."  *Nutrition 21 v. United States*, 930 F.2d 867, 869 (Fed.

5

Cir. 1991) (emphasis in original). Thus, Quantronix must demonstrate, "in light of the presumptions and burdens that will inhere at trial on the merits, (1) it will likely prove [infringement] and (2) its infringement claim will likely withstand [Data Trak's] challenges to the validity and enforceability of the . . . patent[s]." *Purdue Pharma*, 237 F.3d at 1363 (quotations omitted). In doing so, Quantronix must make a "clear showing" that at least one claim in one valid patent-at-issue is infringed by Data Trak. *Nutrition 21*, 930 F.2d at 870; *see also Abbott Labs. v. Andrx Pharms., Inc.*, 473 F.3d 1196, 1213 (Fed. Cir. 2007) (finding that because the district court did not err in granting a preliminary injunction based on the '718 and '616 patents, it need not reach whether the court erred in basing its preliminary injunction on the '407 patent). If Data Trak raises a "substantial question" concerning infringement, validity, or enforceability, a preliminary injunction should not be granted. *Amazon.com*, 239 F.3d at 1350-51.

An infringement analysis requires two steps. First, the Court must determine the meaning and scope of the patent claims asserted to be infringed. *Id*. at 1351. Second, the Court must compare the properly construed claims to the device accused of infringing. *Id*. Patent claim construction, *i.e.*, the interpretation of the patent claims that define the scope of the patent, is a matter of law for the court. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 970-71 (Fed. Cir. 1995), *aff'd*, 517 U.S. 370 (1999). *Markman*, however, does not require a court's interpretation of claims during a preliminary injunction proceeding at an early stage in a case to be conclusive and final. *Sofamor Danek Group, Inc. v. DePuy-Motech, Inc.*, 74 F.3d 1216, 1221 (Fed. Cir. 1996). "A trial court may exercise its discretion to interpret the claims at a time when the parties have

presented a full picture of the claimed invention and prior art." *Id*. Therefore, claim construction findings and conclusions at the preliminary injunction stage are not binding at trial. *See Ill. Tool Works, Inc. v. Grip-Pak, Inc.*, 906 F.2d 679, 681 (Fed. Cir. 1990).

Proper claim construction requires an examination of the intrinsic evidence of record, including the claims of the patent language, the specification, and the prosecution history. *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996). The terms used in the patent are presumed to carry "the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1313 (Fed. Cir. 2005) (en banc), *cert. denied*, 126 S. Ct. 1332 (2006). The specification is "the single best guide to the meaning of a disputed term." *Id*. at 1315 (quotations omitted). The specification may prescribe a special definition given to a claim term, or a disavowal of claim scope by the inventor. *Id*. at 1316. In such cases, the inventor's intention that is expressed in the specification is dispositive. *Id*. The court may use a dictionary or technical treatise to "assist in understanding the commonly understood meaning" of a term, so long as any meaning found in such sources does not contradict the definition that is found in the patent documents. *Id*. at 1322-23. In addition, the court may not import limitations from the specification into the claims. *Id*. at 1323.

Means-plus-function limitations are interpreted according to 35 U.S.C. § 112, ¶ 6, which "allows a patentee to recite a function to be performed as a claim limitation rather than reciting structure or materials for performing that function." *Omega Eng'g, Inc. v. Raytek Corp.*, 334 F.3d 1314, 1321 (Fed. Cir. 2003). The court's construction of a

means-plus-function limitation follows a two-step approach. *Id.* First, the court "must identify the claimed function, . . . staying true to the claim language and the limitations expressly recited by the claims." *Id.* (citation omitted). Once these functions are identified, the court must "ascertain the corresponding structures in the written description that perform those functions." *Id.* "A disclosed structure is corresponding 'only if the specification or the prosecution history clearly links or associates that structure to the function recited in the claim.'" *Id.* (quoting *B. Braun Med., Inc. v. Abbott Labs.*, 124 F.3d 1419, 1424 (Fed. Cir. 1997)). "[T]he structure must be necessary to perform the claimed function." *Id.* Whether certain claim language invokes 35 U.S.C. § 112, ¶ 6, is a question of law. *Personalized Media Commc'ns, LLC v. Int'l Trade Comm'n*, 161 F.3d 696, 702 (Fed. Cir. 1998).

The Court presumes that an applicant's use of the term "means" in a claim limitation was intended to convey a means-plus-function limitation under § 112, ¶ 6. *Sage Prods., Inc. v. Devon Indus., Inc.*, 126 F.3d 1420, 1427 (Fed. Cir. 1997). But this presumption is rebuttable if the properly construed claim limitation itself recites sufficiently definite structure to perform the claimed function. *Id.* at 1427-28. In determining whether a claim term limitation recites sufficient structure, the court inquires into whether the "term, as a name for structure, has a reasonably well understood meaning in the art." *Watts v. XL Sys., Inc.*, 232 F.3d 877, 880-81 (Fed. Cir. 2000) (quotations omitted).

Quantronix asserts that Data Trak's Dimmer meets all of the limitations of Claim 21. Initially, Quantronix offered several claim elements for construction. For the

8

purposes of this motion, Data Trak, however, only contests infringement on the ground that the Dimmer does not meet the "trigger means" limitation. Data Trak does not contest Quantronix's proposed claim constructions and specifically does not contest Quantronix's proposed claim construction for the "trigger means" limitation.

Claim 21 of the '015 patent reads as follows:

21.  An apparatus for measuring an object, comprising:
two ultrasonic transducer means, each having an emitter and a receiver associated therewith and oriented in substantially mutually perpendicular relationship to define a two-dimensional field of greater extent in each dimension than that of the largest object to be measured, said ultrasonic transducer means each being aimed across said field to measure a mutually perpendicular dimension of said object;
a third ultrasonic transducer means having an emitter and a receiver associated therewith for measuring a third dimension of said object in a direction substantially mutually perpendicular to said first two measured dimensions;
trigger means for selectively activating each of said transducer means to take a dimensional measurement when said object is in proximity thereto;
timer means for determining travel time between the generation of an ultrasonic wave by each emitter and the receipt of said wave by its associated receiver after reflection from said object;
correlation means for correlating said travel times to linear distances;
computing means for determining the dimensions of said object from said linear distances; and
data collection means for collecting said dimensional measurements.

('015 patent, col. 14, l. 61 – col. 15, l. 21.)

Here, the "trigger means" claim element does not recite sufficient structure to perform the undisputed function of selectively activating, and Data Trak does not dispute and has not presented evidence to overcome the presumption that this is a means-plus-function limitation. As to the corresponding structure disclosed in the specification for carrying out the function, Quantronix contends that "trigger means for

9

selectively activating each of said transducer means to take a dimensional measurement when said object is in proximity thereto" should be construed to comprise either a beam, a sensor, a timer, a footswitch, a software command or equivalents thereof. Quantronix points to the '015 patent specification, which provides in part as follows:

> Given that orientation of movement, photocell 22 and retroreflector 24 are preferably mounted substantially in lateral alignment with sensors 14 and 16 so as to trigger a measurement when the leading edge of a large object 28 or a small object 26 interrupts the light beam between photocell 22 and reflector 24. Photocell 22 may be any commercially available photocell, preferably operating in the infrared polarized light range. Proximity sensors of various types, including but not limited to magnetic or capacitive, may also be employed.

('015 patent, col. 4, ll. 9-19.) Quantronix also points to the following portion of the specification:

> Sensor 12 is triggered by the interruption by an object of the beam 23 between photocell 22 and retroreflector 24 (FIG. 5) in the instance of unit 10, and by the operator in the case of unit 110. Process controller 180, in response to photocell 22, produces a trigger signal, sent to pulser 202 and counter/timer 204, causing pulser 202 to transmit an activation signal to sensor 12 and counter/timer 204 to start counting. If static measurement unit 110 is being controlled, pulser activation may be triggered by a timer, footswitch, software command or other suitable means via unit 180. The pulser signal causes sensor 12 to transmit an ultrasonic signal burst toward the object to be measured.

('015 patent, col. 9, ll. 27-40.) In addition, Quantronix cites to the following portion of the Summary of the Invention:

> [T]he measuring . . . operations may be triggered and data accumulated and processed by computer means; bar code or other optical character recognition via an optical character recognition reader decodes identification of the objects measured to automatically correlate measurements to a specific package[.]

('015 patent, col. 2, l. 67 – col. 3, l. 5.)  Again, Data Trak does not dispute Quantronix's construction.

Although neither party entered the '015 patent's prosecution history as evidence for this motion, the parties represented at oral argument that there is nothing in the prosecution history that would assist the Court in claim construction and that the Court had everything that it would need in front of it to make a determination for the purposes of this motion.[6]  Relying on the parties' representations, and upon thorough consideration of the available intrinsic evidence, the Court agrees with Quantronix and construes "trigger means," for the purposes of this motion, to comprise either a beam, a sensor, a timer, a footswitch, a software command or equivalents thereof.

Based on this construction, Quantronix contends that the Dimmer infringes Claim 21 of the '015 patent.  Specifically, Quantronix asserts that the "trigger means" limitation reads on the Dimmer as follows:

> The Dimmer inherently includes a device or mechanism used to selectively trigger each of the ultrasonic transducers (2), (3), and (4) to take a dimensional measurement of the object (6) when the object (6) is placed on the surface (1) in proximity to the ultrasonic transducers (2), (3), and (4). (Kennington Declaration, ¶ 25; Schafer Declaration, ¶ 21).  A software command can be used to selectively trigger each of the ultrasonic transducers (2), (3), and (4) to take a dimensional measurement when an object (6) is in proximity to the transducers (2), (3), and (4).  (Id.). Therefore, at least the software command comprises trigger means for selectively activating each of the ultrasonic transducers (2), (3), and (4) to

---

[6]  In addition, neither party entered the '392 patent's prosecution history as evidence for this motion either.  And the parties similarly represented at oral argument that there is nothing in the prosecution history that would assist the Court for the purposes of ruling on the present motion.

> take a dimensional measurement when an object (6) is in proximity to the transducers (2), (3), and (4), although it is very likely that the ultrasonic transducers (2), (3), and (4) can be triggered by other trigger means. (Kennnington Declaration, ¶¶ 26, 28, and 29).

(Decl. of H. Dickson Burton in Supp. of Pl.'s Mot. for Prelim. Inj. and Req. for Evidentiary Hr'g, Ex. A at 2-3.)

Data Trak disagrees, asserting that the Dimmer does not have "selective triggering means."[7] Specifically, Data Trak asserts that the front transducer on the Dimmer is not selectively fired. Instead, Data Trak asserts that the front transducer is "free firing," firing several times each second to take a dimensional measurement regardless of whether an object has been placed in proximity to the transducer. When an object is not in proximity to the front transducer, Data Trak explains that the Dimmer's control system simply ignores the dimensional measurements taken. Data Trak further explains that when the measurement changes (i.e., when an object is present), the control system detects the dimensional change from the front transducer, and then the remaining transducers are sequentially fired to take a dimensional measurement. It is then, Data Trak asserts, that the Dimmer records the dimensional measurements taken from each of the transducers.[8]

---

[7] Data Trak does not assert invalidity or unenforceability against Claim 21.

[8] Data Trak contends that the free-firing nature of the front transducer cannot be ascertained by reviewing the materials in the record; rather, Data Trak contends that such an inquiry would require an inspection of the Dimmer. Therefore, Data Trak requests that the Court exclude the Declarations of Robert L. Kennington, Clark Skeen, and Mark E. Schafer for lack of foundation because they did not personally examine the Dimmer. The Court declines Data Trak's request. As shown below, the Court's decision

(Footnote Continued on Next Page)

Quantronix responds, asserting that the trigger means of the Dimmer comprises the control system (i.e., the control box), and that the control system activates the front transducer to detect the presence of an object when an object is placed on the platform of the Dimmer. Therefore, Quantronix contends that even though the front transducer may be firing several times a second, the trigger means still activates the front transducer to take a dimensional measurement only when the trigger means detects the presence of an object. Quantronix therefore asserts that Data Trak neglects the claim language that requires that a "dimensional measurement" be a dimensional measurement of the object being measured.

The Court agrees with Quantronix to the extent that it finds that there is evidence in the record showing that the Dimmer meets all elements of Claim 21. Defendant Robert R. Tessier, the founder and sole owner of Defendant Wildwood Technology, LLC, who is responsible for the design and manufacture of the Dimmer, states in his declaration that "the control box contains a single Senix USWJ232-PCB circuit board for *controlling the firing of the transducers (including the Front Transducer)* and this circuit board provides for free-firing of the controlled transducer." (Decl. of Robert R. Tessier in Supp. of Defs.' Mem. in Opp'n to Pl.'s Mot for a Prelim. Inj. ("Tessier Decl.") at ¶ 23 (emphasis added).) The User's Guide for the Senix Utrasonic Sensor USWJ232 circuit board confirms that the transducer is connected to the circuit board through the use of a

---

(Footnote Continued From Previous Page)
is not based on any of these three declarations. Moreover, Data Trak's objection goes to the weight to be given to the statements, not their admissibility.

cable. (Tessier Decl., Ex. A at 6.) Because the control box contains a circuit board that is connected to the transducer, it is likely that the control box has the means for firing the transducers. Further, even though the front transducer may be continuously firing, or "free-firing," the firing is controlled by the control system in the control box; it cannot "fire" without the connection to the control box. The fact that the Dimmer's transducers can be controlled by the control system, and the fact that the Dimmer reacts differently when there is an object in proximity to the front transducer, which results in the recording of the response from each transducer for the purpose of taking a dimensional measurement, supports the Court's conclusion that the Dimmer contains "trigger means for selectively activating each of said transducer means to take a dimensional measurement when said object is in proximity thereto," which in turn supports Quantronix's infringement assertion. The Court therefore finds that Quantronix has met its burden by establishing a likelihood of succeeding on the merits of Claim 21 of the '015 patent.

Because Quantronix has shown a likelihood of success on the merits of its patent infringement claim as to Claim 21 of the '015 patent, the Court grants its Motion for Preliminary Injunction. As a result, the Court need not reach the questions of whether Data Trak infringes Claim 6 of the '392 patent or whether the '464 patent is invalid at this preliminary injunction stage of the proceedings. Even so, the Court notes that given that there are "substantial open issues and questions that must be litigated before a finding of infringement [or invalidity] can be made, including [questions regarding] claim construction," *Cargo Protectors, Inc. v. Am. Lock Co.*, 92 F. Supp. 2d 926, 930 (D. Minn.

2000) (quotations omitted), the Court would deny a preliminary injunction at this time based on the alleged infringement of the '392 or '464 patents.

### B. Irreparable Harm

"Irreparable harm is presumed when a clear showing of patent validity and infringement has been made . . . . This presumption derives in part from the finite term of the patent grant, for patent expiration is not suspended during litigation, and the passage of time can work irremediable harm." *Amazon.com, Inc.*, 239 F.3d at 1350 (citations and quotations omitted).

Aside from any presumption, Quantronix primarily asserts that it will be irreparably harmed because Data Trak's infringement will destroy Quantronix's market share. Specifically, Quantronix contends that because there is currently a unique opportunity for rapid growth in sales of dimensional data-acquisition systems, if Data Trak is not immediately enjoined from selling dimensional data-acquisition systems (i.e., the Dimmer), Quantronix's market position will erode further, causing extreme difficulty to recover. In addition, Quantronix contends that Data Traks' dimensional data acquisition systems are of inferior quality to Quantronix's systems, and therefore, Data Trak's sales may likely cause customers to be disinclined to buy any dimensional data-acquisition systems in the future, which would further injure Quantronix. Quantronix contends that the above-described damage cannot be adequately remedied with monetary damages. Data Trak does not respond to Quantronix's assertion that Quantronix will be irreparably harmed absent a preliminary injunction.

The Court finds that Quantronix has shown irreparable injury based on continued infringement, Quantronix's loss of profits and the resulting loss of business opportunity and market share, the unique opportunity for rapid growth in sales of Quantronix's patented products, and the fact that the '015 patent will expire in approximately two years.

### C.     Balance of Harms and Public Interest

Because Quantronix has demonstrated both a likelihood of success on the merits as to Claim 21 of the '015 patent and irreparable harm and because Data Trak does not raise any prejudice that it may have if a preliminary injunction is granted, nor responds to Quantronix's assertion that the balance-of-harms factor weighs in Quantronix's favor, the Court finds that the balance of the harms weighs in favor of Quantronix.  In addition, because Quantronix has demonstrated that it is likely that Data Trak infringed or violated its rights and because Data Trak does not respond to Quantronix's assertion that the public interest factor weighs in Quantronix's favor, the Court finds that the public interest here favors the protection of patent rights and favors granting a preliminary injunction.

## ORDER

Accordingly, **IT IS HEREBY ORDERED** that:

1.   Quantronix's Motion for Preliminary Injunction (Doc. No. 13) is **GRANTED**. Defendants, their officers, agents, servants, employees, attorneys, parents, subsidiaries and related companies, and all persons acting for, with, by, through or under them having notice of this Order by personal service, electronic mail, or otherwise, and each of them, shall be preliminarily enjoined and restrained during the pendency of this action, from:

   a.   either directly or indirectly, or in any way, manufacturing, using, importing, selling, offering for sale, leasing, and/or offering for lease the Dimmer product, or any other data-acquisition system or dimensioning system product as claimed in United States Patent No. 5,042,015.

   b.   Specifically, this Preliminary Injunction shall include within its scope any package dimensioning system or apparatus, comprising:

> two ultrasonic transducer means, each having an emitter and a receiver associated therewith and oriented in substantially mutually perpendicular relationship to define a two-dimensional field of greater extent in each dimension than that of the largest object to be measured, said ultrasonic transducer means each being aimed across said field to measure a mutually perpendicular dimension of said object;
> a third ultrasonic transducer means having an emitter and a receiver associated therewith for measuring a third dimension of said object in a direction substantially mutually perpendicular to said first two measured dimensions;
> trigger means for selectively activating each of said transducer means to take a dimensional measurement when said object is in proximity thereto;
> timer means for determining travel time between the

        generation of an ultrasonic wave by each emitter and the receipt of said wave by its associated receiver after reflection from said object;

    correlation means for correlating said travel times to linear distances;

    computing means for determining the dimensions of said object from said linear distances; and

    data collection means for collecting said dimensional measurements.

('015 patent, col. 14, l. 61- col. 15, l. 21.)

    c.    The Preliminary Injunction is hereby stayed until Monday, August 13, 2007, at noon. At that time, absent an agreement otherwise by the parties, the Preliminary Injunction shall be in full force and effect.

2.    Data Trak's Motion for a Stay of Litigation on the '464 Patent Pending Completion of Reexamination of the '464 Patent (Doc. No. 44) is **DENIED**.

Dated: August 1, 2007                s/Donovan W. Frank
                                            DONOVAN W. FRANK
                                            Judge of United States District Court